Judge Mills
delivered the Opinion of the Court.
Paul Durrett, the appellant, purchased of Joseph Simpson aiot of ground in Mountsterlirig, with sundry buildings situated thereon, used as a tavern cal led the hotel, at the price of seven thousand dollars, and for part of the price thereof, paid him another house and lot at the price of two thousand six hundred dollars. The contract was made and reduced to writing on the 7th o! March, 1817, in the form of articles of agreement. Besides the $2600 for the house and lot aforesaid, Durrett paid $500 in hand, and was to assign him a note on John Pugh & Co. for the sum of $715, and to deliver up Simpson’s own notes for $165; and was further to pay $1000 on the 13th January, 1819, $1000 on the. 13th January, 1820, and $!000 more, the last payment, on the first January, 1821. The estate was then held by Thomas L, Patterson, under a lease from Simpson, which did not expire till the 13th January, 1819, on which day Hmpson stipulated to give the full possession of it, and was to convey at any time, so soon as the boundaries were ascertained
Durrett paid all the payments due before the 13th. of January, 1819, when possession was to be delivered, and shortly after that day filed this bill, praying a rescission of the contract, and a restoration of the payments made, relying on sundry grounds stated in his hill, all of which are either untrue or untenable, and need not be noticed, except the following:
First: That the boundary was ascertained, but it left out a part of the stable which was attached to the premises and named in the articles, as sold; it being situated, in part, on an adjoining lot, and divided by the true line.
Second: That Thomas L. Patterson, the tenant of Simpson, during tenaney,. and after-the purchase *518 of Durrett, had so wasted, injured, and dilapidated the hom-e, that it would take a large sum to repair it; and Simpson, on that day, could not surrender the possession, in the order in which, he was bound todo it, according to tbe tenor of his contraed.
Stafoment o the bill as (o the wati-r, works.
Tender of V-onveyannc, y>f possession, ami of money, and each refused.
i'impson answers, obtains judgment at law; Durrett enjoins; Simpson dies, and the suit is revived by oonfent.
Thirdly: That Simpson owned a spring near three hundred yards from the hotel, from which he hád formerly made a conduit, or line of pipes under ground, which conducted water in abundance, into the yard T the hotel, where the water was- discharged in abundance for necessary purposes, all which were in existence at the date of the purchase;- and in the articles of agreement, Simpson had covenanted, in the following words — “That the privilege of the water-works, as they now are, shall remain, and the benefit thereof remain to said Durrett forever, so far as respects the right to f lie spring, and the privilege of the conveyance of the water as it novo is.” That Simpson, after the dale of the contract, liad branched lines of pipes from the main conduit, and sold the benefit of tlye- water to others, thereby robbing the premises sold of its supply. That the line passed, through grounds not held by him, and from the owners thereof, he had no conveyance or. grant, authorising him to continue the use of the pipes, and liad disabled himself', and curtailed that privilege on his own grounds, and, threfore, could not convey the privilege of the water-works as they were at the date oftho contract; and that the supply of water was of great value to the estate sold.
That on the day that possession was to be delivered, he tendered glOOO specie, then due, and Simpson, by his agent, tendered a deed of conveyance, which he, Durrett, refused to accept, because the dower of Simpson’s wife was not relinquished — because the deed did not include the stable’ — because the estate was then much injured by Simpson’s tenants, and because the conveyance tendered did not pass and secure the privilege of the water works as they existed at the date- of the contract, and could, not. at that time do so. That Simpson tendered the possession which he refused to receive.
The defendant, Simpson, answered, contesting or denying all these grounds of equity. He afterwards. *519 sued at Jaw to recover the purchase money, and Recovered judgments, which Durrett enjoined by an amended bill. During the progress of the cause, Simpson departed this life, and t.hc cause was revived by consent, against his administrator and heirs.
Decree of the circuit court refusing a rescission, but giving compensation for the ground not embraced by vendor’s conveyance
Want of title to an unimportant part ofthe ground, a subject of compensation, not ground for rescissionr
On a final hearing the court below decided against all the grounds of equity set up in the bill, except that which charged that the stable did not all stand on the premises sold, which the court held not to be sufficient to vacate the contract, but only to entitle the complainant to compensation. This compensation was ascertained by a jury, and the court credited it on the judgments at law, and dissolved the injunction for the residue, with damages, and dismissed the bill, directing each party to bear their own costs. From this decree Durrett appealed, and its merits are now before us.
The court below did right in sustaining the claim for the lot sold not including the stable. For it is evident fRom the proof, that the stable, which is expressly mentioned as included in the sale, and which was supposed to be on one boundary line, is projected over the line about five feet four inches. On whose ground it is extended, does not certainly appear. Perhaps by the plat it is on the street or public square; but certain it is, on ground not belonging to Simpson. This would subject Durrett to a 1’einoval or loss of the stable, am) of course to some expense. But as ibis was evidently a mere mistake of the parties, and might have arisen between different surveyors; and as the stable is one of logs and of some age, and no objection to its being remoled, is shewn, and the expense of removal is proven to be about one hundred dollars, assuming, this as the only ground of equity sustained, we should not be disposed to disturb the decree of the court below on this point. Had this mistake been known at the time, it might have occasioned a provision in the contract to meet the inconvenience; but it is not probable that it would have prevented the contract altogether, or essentially altered any of its features; and such mistakes are frequently held in equity to be a subject of compensation, rattier than a ground of rescission of a contract, to which they bear but a *520 very small proportion in value. But. such mistakes when not alone, but are joined to other tenable grounds in a question of rescission of contracts, may become additional reason for rescission. We shall, therefore, examine the remaining grounds relied on here, and see whether they be or be not tenable to any extent, before we determine that this mistake shall have no greater weight in the decision of the controversy.
In a contract toconvey and deliver possession, nt a future day, the purchaser bears ordinary detorioary, not the waste of vendor’s tenants.
Evidence of the vva'te .committed -and suffered by Simpson mid bis ton-' ants.
We do not concur with the court below in overruling the claim for damages and injury done to the estate by the tenants of Simpson, after the day of sale, and before the possession was to be delivered. On this point there is no express provision in the articles of sale. Of course it may be assumed that, the purchaser meant to run the risque of deterioration by an ordinary and proper use of the estate. But it is against the intention of the parties, and the spirit of the contract, to suppose that the vendee was to bear every injury which might he inflicted on the estate, until the possession was delivered.
It is clearly shewn that Patterson, the tenant of Simpson, frequently gave up the use of a room or rooms in the house, to be used by mountebanks and exhibitors of shows and spectacles for gain, who drove spikes into the floors, or wails, or inserted screws into them to suspend' their scenery and apparatus, which injured the floors, and broke, in many places, the. plaistcring on the walls which were made of brick, which was of considerable injury. But what is still more, the tenant or some of his sub-tenants, suffered the garret to be very improperly appropriated, by reason of which the plaistering was much stained, and loosened fromdts hold in the lower apartments of the house, so that the costs of repairing it would be considerable.
As to this cost of repairing, there is some contrariety in the testimony; but as to the appropriation of the. rooms to these purposes there is no conflict. Two or three persons who were called to assess damage- f>r this injury to the estate between Simpson and Patterson, depose that they assessed it to about twen’j dollars, and suppose that sum to be enough for the difference in the property, between the com *521 snencemefit and termination of Patterson’s tenancy; But these witnesses must have went on (he supposition that much of this injury had been done before Patterson entered. For (hero are two or throe ofhers who boarded with Patterson, and knew well the condition of the house, before and afterwards, and who'are plaistercrs, and, therefore; proper judges of much of the injury, fix its date after the sale, and depose that the plaistering cannot be repaired by patching it, but must be removed and thé walls washed, to place the house in the same situation, and the costs for doing so would be from five to seven hundred dollars.
If waste be committed, between the contract and the time for making the conve y pnce and delivering possession, by vendor or his tenants, vendor must fender compensation with the,possession and deed, otherwise ven* dee may refuse them.
Such a case is not like the accidental desi ruction of the improvements.
Touching the water-pipes.
Duxrett’s constxu tiott of me agreement.
We will not, for the present, enquire whether this alone would be good grounds for rescinding the contract. It must at least be a matter of lair compensation. As no such compensation was offered or tendered to Burrett, ori the day that his possession was to commence, he might be well warranted in refusing either the possession or conveyance.
Every reason must prove that Simpson, and not Burrett, was to run the risque of this injury. The estate was leased for Simpson’s benefit, and to him alone his. tenants were responsible.
There is no similarity between this case and the one relied on in argument, where the vendee is compelled to complete the contract when the buildings were consumed by fire, without the fault of either Jjiirty. Here the injury must be held to arise, indirectly at least, from the act of the vendor, and he ought not, therefore, to be permitted to compel thq vendee to bear the loss.
We will now attend to the third ground of equity arising from the water-works; and defects in the ¡deed tendered by Simpson.
There seems to have arisen between the parties, this controversy on this point, whirl» has been debated in this court. Fart of the line of pipes passed through the property of others, and for several yards across the public square.
On the part of the vendee, it is contended, that the true construction of the agreement, as before recited, is, that Simpson was bound to obtain, secure and convey to Burrett the continued privilege of *522 the line, in '¿life order it was at the date of the cor-tract, over all ‘(he intervening ground, between the spring and hotel.
Simpson’s construction.
'Construction of this court,
Af íhe°! nvY*4 tege'ofa1''1" branch line from a prinwator pipes, fromafounfain, creates ■at'twiíie.nanCy
Such a parol grant does the grantor to execute a previous contract of sale.
Objections because of a sale of a part williams^ through ’ whiph the ^^d^over-i-úi-eabecause it was recit®fa^thecos"
*522 On the other side, it is insisted, that Simpson was, by the stipulation, only to place Durrett in his stead, and possess him of the privilege as then held, and no more, subject to such interruption as might thereafter arise from tiie holders of the intervening property revoking or terminating their grants, such as they were, to insert the pipes at first.
Without determining between these two positions, we s'hall content ourselves with saying, that as the fountain, and a considerable portion of the ground intervening between it and the hotel, belonged to Simpson, the stipulation could not mean less than securing to Durrett, all the privilege then held by Simpson, of drawing the water from the spring and passing it forever, uninterrupted, so far as it passed through the land then held by Simpson himself, and we will then enquire whether Simpson, after the date of the contract and before his tender of a conveyance, had curtailed this privilege by intervening sales and conveyances.
One charge of violation of this stipulation by ®*mPson’ the date of his Contract and before he tendered a conveyance, is, that he took a branch-line to the lot of George Howard, and from that branch another to the lot of William Hopkins, tliere^y lessening the supply at the hotel. It is in proof that such lines were taken out; for which Howard an(j Hopkins were to pay, one twenty-five dollars, an(l the other ten dollars per annum. But these grants were given in word only, Without any period of continuance being fixed, and were, therefore, revocable as other tenancies at will, and could not prejudice the original line, to any extent. Durrett, after his conveyance from Simpson, would, as to these, have stood in the shoes of Simpson, and would have been entitled to the revenue therefrom, orto discontinuance of the grant. Of course this was il0 disposition of the water which could seriously jnjupe the interest of Durrett.
R >s urged in the bill that Simpson had sold to John Williams, and given him a conveyance bond *523 Coi’ a small square out of the hotel lot, before his sale to Durrett, and that he had conveyed to Williams without reserve the ground afterwards, including the line of pqies which passed under a house ed by Williams, which made the line inaccessible, and so that it could not be repaired. This bond to, Williams is tendered as a part of the bill, but is not produced; on the contrary a conveyance of record to Williams is produced, made nearly one year before the purchase of Durrett. In that conveyance Simpson passes the ground, reserving only the right of entering lor the purpose of removing and taking-away the water-pipes which passed through it; but not the right of again inserting them. But this sale to Williams was known at the date of the sale to Durrett; for the conveyance was not only of record but the written contract with Durrett refers to it on its face, and purports to pass to him all the hotel lot, improvements and appertenances “except a part or piece, the said Simpson had sold to John Williams.” This part sold to Williams was a small square carved out of the hotel lot itself, covering the line of pipes, which Simpson, in the conveyance to Williams reserved the right of removing. Now it is evident from the inspection of the plat made in this cause, that if the water was discharged from the. pipes before it reached the premises of Williams, it would still supply the hotel lot; or that the line could be taken around the premises of Williams and supply the hptei itself. Of course the sale and conveyance to Williams was not a serious interruption of the water, and such as it was, it was known to the parties at the time,, and the inconvenience was to be. borne by Durrett, and of course as to the sale and. conveyance to Williams, he had no right to complain.
Sale of the, 8*0^°^8 from the prin. cipal line of tractto soil the privilege «Ptho watest in the state in which it then was, is a violation of the contract.
*523 The next disposition of water by Simpson which we are to notice is a line extending from the line leading to the hotel, to the lot of McGowan and Stockton. This is the same lot which Durrett had conveyed to Simpson in part payment for the hotel estate, and Simpson afterwards,aokl and conveyed it to McGowan and Stockton,, having previously sun a branch, line of water pipes,t,hereto,.and in his *524 conveyance to them only reserved half the water tit bo conveyed to Durrett. This was a disposition of tiie water in violation of the contract with Durrett, ami such as Sitnpson, consistent with his stipulation, ought not to have made.
S,alr. of (ho aprinsr and iittervi’Ming ground.
Siipulalionin a conveyance th it tho pipos oonvoyinp¡tbft water through the lot is to remain undisturbed by the grantee, (loos not ¡;ccerve the right in tho grantor to enter and repair or insert new pi ¡íes. After those in (he ground decay the right a,t an end.
Sale of the ground thro’ which water piers oassed io the hotel, the privilege of which vendor of thohotel liad oonisacted to convey wilh it in the state-it then was, made ho fore the conveyance, held a sufficient ground for ro. rescission.
*524 But the last disposilion of water, or of his land?; through which it passed, without reserving the full privilege for Durrett, is still more serious.
After his contract with Durrett he proceeded to sell and convey-the spring, which was on an out lot of the town, and the intervening lands which he held between it and the hotel lo sundry persons, and the several conveyances to them are produced.
In all of them lie reserves the water privilege, and the right of entering and repairing the pipes, except one conveyance to John Anderson of part of the out lot, at a considerable distance from the hotel-, dated the 2 1 of May. 1818, extending across the Hue of pipes which led from the spring.
In this conveyance lie. makes no reservation, until after tho close of the deed, the following memorandum is added’,
“It is understood that tho pipes conveying tho water through said lot is to remain undisturbed by the. said Anderson.”
Here is no reservation of a right to enter, ami repair, or remove the. pipes and insert others. Anderson is prohibited from disturbing the pipes already there, but when they have performed Ihei;* functions, the right ceases, and no new ones can bo inserted; and it is not shewn that there is any way to avoid the premises of Anderson or to come at the water longer than the existence of the pipes already there; and after they are gone the privilege ends.
The necessity of water at every habitation is well known; the convenience of it is a great enjoy monto But the value of it to such an establishment as this, on the. very spot, where water is scarce as is shewn to be. the rase in this town, is very great, and is rated at different prices ¡sor annum, by different witnesses^ from $20 to $100. It ¡mist, therefore, have been a great inducement to this contract, and the absence of it must lessen greatly tiie value of ths> *525 ¿state; and the destruction of the privilege between the hour of sale, and that of conveyance and delivery of possession to Durrett must alone furnish him with a good ground for avoiding the contract; and it still becomes stronger by the waste, and injury to the property by Simpson’s tenants before noticed.
Conveyance in such case would have to refer to the dato of the original eon-tract for the. privilege of the water pipes to he granted.
That vendor had conveyed a house received in part payment of the larger estate, and was unable to restore it, is ao insuncrahlo bar to h is bill fox a rescission, hut not to (ho abdication of vendee.
The deed tendered to him, only secured to hira in express terms the existence of the privilege at its date, and not at the hour of sale which was near two years before that. This privilege had been much curtailed by Simpson in the mean time, and indeed placed in such a situation by his own acts, as precluded him from conveying it. Durrett, therefore, did right in refusing to accept a conveyance, and insisting upon a rescission of the contract.
But there is an objection urged against setting aside the contract in a court of equity arising from the conveyance of a house and lot by Durrett as part consideration for the hotel- This house and lot as before stated, has since been sold by Simpson and conveyed to McGowan and Stockton, and it is contended that as the chancellor cannot, place the parties in statu quo by restoring ibis (muse and lot, he ought to dismiss the bill and leave the parties to their respective remedies at law.
If this objection lay in the mouth of Simpson, and Durrett the complainant had so disposed of what he liad received, as to be unable to restore, it would be an insuperable bar to setting aside the contract. For he who asks the resforaiion of the parties„to their former situation, ought to be able to comply witli his part. But it is the defendant, who is bound to restore, that has disabled himself iVom restoring what he has received, and now relies on his own act, placing tiiis house and lot beyond bio control as a reason, why lie should keep all. If such a reason was held valid, thou no contract could be rescinded even for fraud, where rho defendant had parted with what he bad gotten, perhaps for the express purpose of prevent! !g a re* scission of the contract. Of course this objection canndt prevail, and as Simpson cannot restore this house and lot he must account for it, at tbs price stipulated between the, parties,,
On a rescission in such caso, the party who had disposed of f,he property shall account for the price it was estimated at in the contract with interest from the date he obtained possession.
Improvements anti rents ai'.i usted. Pavement of side walks reckoned improvements.
Ilepts.
Decree of rescission.
Atañíate.
This result, upon the whole case, will require an account to be taken between the parties before the controversy can be closed on the return of the cause to the court below; about the principles of which ifc is necessary we should say something.
In this account Simpson’s estate must be charged with the price of the house and lot paid by Durrett, as agreed by the parties. And as Durrett retained this house and lot for some time after he was to have delivered the possession of it, he is to have no interest on the price till he actually gave possession; till tiiat time the rent on one side and interest on the other, must be held to extinguish each other.
Durrett must be credited with the other payments which he has made with interest thereon.
fie must also have credit for any lasting and valuable improvements, which he made on the house or premises, as he was, during Patterson’s lease, permitted to improve it by an arrangement between the parties. In these improvements must be considered the pavements of its side, walks appertenant to the premises. And as it is insisted that some of those improvements, rather injured than improved the estate, if such injury exists, for these improvements Durrett must receive no compensation, but be charged with such injury.
On the day when possession was to have been delivered, Durrett was in possession of part of the house as tenant of Patterson, and it was agreed that lie might retain it afterwards without prejudice to the contract on one side, or the rescission of it on the other. Of course Durrett must be charged with the reasonable rent of such part as lie continued to occupy after that day, during the tipie which ha continued to hold it.
After the account is thus taken, the contract must be set aside, the injunction be made perpetual, and all securities for the conveyance, or purchase money be surrendered and a decree rendered in favor of that party, who may have a balance due.
The decree of the court below must, therefore, be reversed with costs, and cause be remanded that such proceedings and decree may be rendered, as herein directed, and such further orders and dpcrces. *527 shade, as shall not be inconsistent with this opinion, and the principles of equity.
The counsél for the appellees moved the court are-hearing, on the ground the suit had not been regularly revived against the infant heirs of Simpson, and it did not appear their guardian ad litem had undertaken the defence} insisting that, therefore., the mandate should direct farther proceedings, which they shewed in the following